(72 App. Div. 228.)

O'REILLY et al. v. ERIE R. CO.

(Supreme Court, Appellate Division, Third Department.  May 7, 1902.)

1. RAILROADS—SETTING FIRES—EVIDENCE—ADMISSIBILITY.
    In an action against a railroad company for setting fire to inflammable
    material on its right of way and permitting it to spread onto plaintiffs'
    land, testimony by a third party that engines running over defendant's
    road at different times before the fires in question was set "scattered
    fire from their smokestacks," while drawing trains at the place where
    he lived, was not admissible to establish the claim that the fires in ques-
    tion were set by sparks from defendant's engines, in the absence of evi-
    dence that the engines to which witness referred were of a similar kind,
    and working under similar conditions as those claimed to have set the
    fire.

2. SAME—PREJUDICIAL ERROR.
    Admission of such evidence was prejudicial error.

Appeal from trial term.

Action by James B. O'Reilly and another against the Erie Rail-
road Company to recover damages from the defendant for negli-
gently permitting dry and inflammable material to accumulate on
its right of way, which was ignited by sparks from its engines, and
from there spread over onto plaintiffs' land.

From a judgment for plaintiffs, and from an order denying a new
trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH,
CHASE, and FURSMAN, JJ.

Henry Bacon, for appellant.
John F. Anderson, for respondents.

PARKER, P. J.  Under the rule of law which was adopted at
the trial, the plaintiff was obliged to establish two facts in order to
recover in this action.  The first was that the defendant had neg-
ligently permitted dry and inflammable material to accumulate along
its track opposite the plaintiffs' lands, and to be in a condition lia-
ble to be ignited from sparks ejected from its engines.  The second
was that the fires in question were actually ignited in this material
by sparks from the engines which passed but a short time before
the fires were discovered.  As to the fact first above stated, the
evidence presented a fair question for the jury, and was of such a
character as does not warrant us in reversing their conclusion.  As
to the second question, while the evidence as to the origin of the
three several fires does not by any means exclude all other causes,
there is probably sufficient to sustain the finding that each was set
by sparks from the engine which passed that locality but a short
time before the fires were seen to break out.  As to the first fire,
in April, 1896, the witness Lewis testified, substantially, that he

was on the track in plain view of the locality when a train passed; that he saw no fire in that vicinity then; that after the train passed he saw the fire break out in some grass and leaves that had been cut the year previous on the defendant's right of way. Another witness, Turner, who was about a quarter of a mile away, testified to seeing the fire breaking out in the same place just after that train had passed. As to the second fire, which occurred on April 11, 1900, the witness Bush, who was at home on the opposite side of the Delaware river, saw a small fire burning on the right of way soon after noon. It was some 15 or 20 feet from the track, and subsequently spread over onto the plaintiffs' lands. A freight train had gone west some 15 or 20 minutes before he saw the fire. As to the third fire, on April 19, 1900, the witness Tyler, who was also on the opposite side of the Delaware river, just after the way freight had gone east, saw a fire start on the east side of the track between it and the stone wall, on the defendant's lands. He saw no fire there in that vicinity before the train went by. That fire burned fast, and spread onto the plaintiffs' lands. Neither of these witnesses testify to seeing any sparks come from the engines, nor that the engines were laboring to any extent. The first two, however, were hauling freight trains going west on an upgrade. The third was hauling a light freight train east, on a downgrade, and going fast. Probably this evidence should be deemed sufficient to sustain the jury's conclusion that sparks from such engines set the fires in question. O'Neill v. Railway Co., 115 N. Y. 579, 22 N. E. 217, 5 L. R. A. 591; Webb v. Railroad Co., 49 N. Y. 420, 10 Am. Rep. 389.

The plaintiffs, however, in addition to this line of evidence, proved an additional fact, under the defendant's objection, which presents a serious question as to whether this verdict should be allowed to stand. A witness, Moses Tyler, who lived a mile and one-half east of the place where these fires started, was allowed to testify that engines of the defendant, running over its road at different times before the fire caught, in 1896 and in 1900, "scattered fire from their smokestacks while laboring, working and drawing trains," at the place where he lived. And this evidence was received, as tending to establish the claim that the engines which passed just before the fire set the fires in question. Was it legitimate evidence to establish such a claim? It was conceded that the engines which are claimed to have set the fires were properly constructed and in good order. No claim is made of any defect on their part. But no evidence whatever is given as to the condition of the engines to which the witness Tyler referred. They may have been badly out of order, or of an ancient and defective construction; also, there is no evidence of how the work which they had to do in passing his place compared with that which the engines in question were doing when the fires in question were set, nor as to whether they were burning the same kind of fuel. In short there is an utter failure to show that the engines to which the witness referred were of a similar kind to, or were working under the same conditions as, those claimed to have set these fires; and therefore the fact

that the former "scattered fire from their smokestacks" furnishes no legitimate reason for concluding that the latter also "scattered fire." It needs no authority to sustain the proposition that, unless the engines were substantially similar in construction, and working under the same conditions, the comparison and conclusions claimed by the plaintiffs should not be allowed. The marked difference in the construction of engines, and their operation under different conditions, are now too well established to permit the inference that because one engine scatters sparks another must necessarily do so. The plaintiff finds authority for this evidence in the Sheldon Case, 14 N. Y. 218, 67 Am. Dec. 155. That case was not one where comparison was sought to be made between an engine conceded to be in perfect repair and others shown to have thrown fire. It was an offer to show that some of the defendant's engines did throw sparks as far as the building shown to have been burned, and that hence it might be inferred that its engines had fired the building in question. The judge writing seems to have placed the decision upon "the peculiar circumstances" of that case, and I do not consider that it goes to the length which the plaintiffs claim from it. The other cases to which he refers are also quite different from the one before us.

The plaintiffs further argue that such evidence, even if not strictly admissible was altogether harmless, because it put into the case nothing more than the law would assume, viz., that all engines, though well constructed and in good order, will necessarily emit sparks when drawing trains. And they cite Frace v. Railroad Co., 143 N. Y. 187, 38 N. E. 102, as authority. But neither that case nor any other that I have discovered holds that the law presumes that such engines will "scatter fire from their smokestacks" when drawing a train under the conditions in which these were drawn. It is to be noticed that there is no direct proof that these engines did emit any sparks. As to the second fire, some 15 or 20 minutes elapsed after the train passed before any fire was discovered. In this instance, at least, the evidence to exclude any other cause than that of the engine is very slight. A track walker, with a pipe and a match, might easily, during that interval, have been the source of all that fire. And it cannot be doubted but that the assumption on the part of the jury that the engine which then passed might be deemed to have scattered fire from its smokestack, because those which the witness Tyler saw scattered fire from theirs, would have great weight in leading to their conclusion that it, and not any other source, set that fire. To "scatter fire from their smokestacks" is a phrase which suggests decidedly more than would be expected from an engine in good order and of approved construction. It might have been proper for the plaintiffs to have proven by those who knew that even such an engine would emit some sparks, sufficiently dangerous to require the defendant to keep its road clear from inflammable material, and to warrant a reasonable conclusion that the fires in question might have been set by them; but that such engines would pass over the road in a whirl of fire, because those which Tyler saw did so, is a method of reasoning which, in my

opinion, should not be tolerated. It may be that, had the evidence not been put into the case, the jury would have reached the same conclusion, but it is not entirely clear that they would have done so. The evidence was squarely put before them, as establishing a fact from which they might infer that the engines in question scattered fire with a profusion equal to those to which Tyler referred, and was therefore well calculated to convince them that they were equally dangerous. Under such circumstances, it would be difficult to see how they could have passed without setting the fires, and therefore it cannot be disregarded as evidence which had no substantial effect.

For this reason I conclude that the judgment and order should be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.